UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
PETER D. GACHE, aka
PETER DJONALD GACHE,

                            Plaintiff,

                    - against -

HILL REALTY ASSOCIATES, LLC, WINTERHILL
REALTY, LLC, MICHAEL T. TOKARZ, individually, DAVID    **OPINION AND ORDER**
L. GOLDRICH, individually and as Manager of Hill Realty
Associates, LLC, PHILLIP A. MARRACCINI, individually and    No. 13-CV-1650 (CS)
in his capacity as Supervisor of the Town of Harrison, N.Y.,
RONALD B. BIANCHI, individually and in his capacity as
Supervisor of the Town of Harrison, N.Y., STEPHEN
MALFITANO, individually and in his capacity as Supervisor of
the Town of Harrison, N.Y., JOHN DOES, I-X and JANE
DOES, I-X,

                            Defendants.
------------------------------------------------------------------------x

Appearances:
Peter D. Gache
Beverly Hills, California
*Plaintiff* Pro Se

Eric Lewis Gordon, Esq.
Keane & Beane, P.C.
White Plains, New York
*Counsel for Defendants Hill Realty, Winterhill Realty,*
*Michael Tokarz and David Goldrich*

Steven Jay Harfenist, Esq.
Friedman, Harfenist, Kraut & Perlstein, LLP
Lake Success, New York
*Counsel for Defendants Phillip Marraccini,*
*Ronald Bianchi and Stephen Malfitano*

Seibel, J.

      Before the Court are Defendants' Motions to Dismiss the Second Amended Complaint,

(Docs. 29, 32), and Plaintiff's Motion to Withdraw the Reference to the Bankruptcy Court, (Doc.

47).  For the reasons set forth below, Defendants' Motions are GRANTED and Plaintiff's Motion is DENIED.

## I.  <u>BACKGROUND</u>

For purposes of the instant Motions, I accept as true the facts, but not the conclusions, as set forth in the Second Amended Complaint ("SAC").  (Doc. 23.)  In addition, because Plaintiff is *pro se*, I will – despite his lengthy litigation experience and obvious skill at and familiarity with legal matters – "interpret the factual allegations of [his] complaint to raise the strongest arguments that they suggest."  *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks omitted).

Plaintiff is a resident of Los Angeles, California.  (SAC ¶ 1.)  Hill Realty and Winterhill Realty are limited liability corporations organized under New York law.  (*Id.* ¶¶ 2-3.)  Michael Tokarz is a principal in the entity that owns Hill Realty and Winterhill Realty, and is a New York resident.  (*Id.* ¶ 4.)  David Goldrich is an attorney and the manager of Hill Realty, and is a Georgia resident.  (*Id.* ¶ 5.)[1]  All of the other defendants are New York residents and were Supervisors of the Town of Harrison (the "Town") at various points between 1994 and 2008. (*Id.* ¶¶ 6-8.)[2]

In August 1985, Plaintiff purchased 104 acres of vacant development land on Barnes Lane in Harrison, New York (the "Barnes Lane Lot").  (*Id.* ¶¶ 12-13.)  After Plaintiff purchased the Barnes Lane Lot, a landfill operated by the Town of Harrison was discovered on a portion of the property.  (*Id.* ¶¶ 16-17.)  The presence of the landfill resulted in significant contamination and adversely affected Plaintiff's development plans for the property.  (*Id.* ¶ 17.)  In September

---

[1] I will refer to Hill Realty, Winterhill Realty, Mr. Tokarz and Mr. Goldrich collectively as the "Hill Defendants."

[2] I will refer to the former Town Supervisors collectively as the "Town Defendants."

1990, Plaintiff filed a lawsuit against the Town seeking damages and an order that the Town remove the landfill and remediate the resulting contamination. (*Id.* ¶ 18.)

In July 1991, Plaintiff filed for Chapter 11 bankruptcy protection. (*Id.* ¶ 21.) On August 1, 1995, the Bankruptcy Court involuntarily converted the Chapter 11 proceeding to a Chapter 7 proceeding and appointed a Chapter 7 trustee (the "Trustee"). (*Id.* ¶ 24.)

On September 30, 1996, the Trustee and the Town settled the lawsuit Plaintiff had filed regarding the Town's contamination of the Barnes Lane Lot. (*Id.* ¶ 25.) Among other things, the settlement required the Town to begin cleaning up the property by May 9, 1997 and to complete the remediation by May 8, 1998. (*Id.* ¶¶ 26-34.) The settlement also required the Trustee to transfer title to a portion of the property to the Town. (Gordon Decl. Ex. C ¶ 4(b).)[3] On November 14, 1996, the Bankruptcy Court approved the settlement, (SAC ¶¶ 25-35), after which Plaintiff moved to have the Bankruptcy Court reject the settlement under Fed. R. Civ. P. 60(b), alleging that he uncovered evidence of fraud, (*see* Gordon Decl. Ex. D ("4/1/97 Transcript"), at 7-22). On April 1, 1997, the Bankruptcy Court rejected Plaintiff's motion. (*Id.* at 24.)[4]

Between March 1997 and December 1997, the Bankruptcy Court rejected several attempts to market and sell the property because the proffered sale prices were too low. (*See* SAC ¶ 36.) The bids rejected by the Bankruptcy Court included a $4.7 million offer by the Town, (*see id.* ¶ 37), that the Bankruptcy Court later described as "offensive to the court," (Gordon Decl. Ex. K ("6/17/98 Transcript"), at 58). Plaintiff's appraiser, Eugene Albert, submitted multiple affidavits to the Bankruptcy Court asserting that the value of the Barnes Lane

---

[3] "Gordon Decl." refers to Declaration in Support of Motion to Dismiss submitted by Eric L. Gordon, Esq. (Doc. 33.)

[4] Plaintiff appealed the Bankruptcy Court's approval of the settlement and rejection of his Rule 60(b) motion. The District Court affirmed the Bankruptcy Court's rulings, and the Second Circuit affirmed the District Court. *See Gache v. Balaber-Strauss* (*In re Gache*), 164 F.3d 617 (2d Cir. 1998) (summary order).

Lot after the cleanup would be at least $11.5 million.  (*See id.* Ex. E ¶¶ 10, 34; *id.* Ex. F ¶ 43; *id.* Ex. G ¶ 12; *id.* Ex. H ¶ 9.)

In April 1998, the Trustee noticed a sale hearing for the property.  (SAC ¶ 44.)  On May 22, 1998, the Bankruptcy Court held the Town in contempt for failing to complete the cleanup. (*Id.* ¶ 47.)  Also on May 22, 1998, the Bankruptcy Court denied Plaintiff's motion to compel enforcement of the settlement and to stay the Barnes Lane Lot auction until the Town completed the cleanup.  (*See id.* ¶¶ 47-48.)

On May 27, 1998, an auction sale for the property took place before the Bankruptcy Court.  (*Id.* ¶ 48.)  Although the SAC states that "Hill Realty [was] the only bidder to show up," (*id.*), the Bankruptcy Court transcript reveals that other potential bidders attended and at least one other bidder actively bid on the Barnes Lane Lot, (*see* Gordon Decl. Ex. J ("5/27/98 Transcript"), at 11-19).  Hill Realty offered the winning bid of $8.95 million.  (*Id.* at 19-23; SAC ¶ 48.)

On June 17, 1998, the Bankruptcy Court held a hearing at which it confirmed Hill Realty's bid.  (SAC ¶ 50.)  At the June 17, 1998 hearing, the Bankruptcy Court wanted to be sure "that there [was] no agreement between [the Hill Defendants] and the town of Harrison," (6/17/98 Transcript 7), and Hill Realty's attorney, David Goldrich (who is a Defendant in this action), averred that there were no dealings between Hill Realty and the Town prior to Hill Realty's offer, (*id.* at 7-8; SAC ¶ 59).  The Bankruptcy Court then stated its reasons for confirming the sale.  (*See* 6/17/98 Transcript 59-66, 77-89.)  In response to Plaintiff's argument that the sale price was depressed because the land was still contaminated and the buyer might have to sue the Town to get it cleaned up, the Bankruptcy Court noted that "it will retain jurisdiction to enforce its orders," including its order that the Town "clean up the property."  (*Id.*

at 59.)  Because the land came with a court-enforceable guarantee that the Town would remediate it, the Bankruptcy Court found Plaintiff's argument that the sale price was depressed to be "spurious, salacious, [and] bogus."  (*Id.*)  The Bankruptcy Court found that $8.95 million was sufficient value for the property, because that price was 81% of Plaintiff's expert's valuation of the Barnes Lane Lot once remediated, and other courts had held 75% of a property's appraised value to be a sufficient bankruptcy auction price.  (*See id.* at 84-87.)  Finally, the Bankruptcy Court denied Plaintiff's motion to stay the sale of the property pending appeal, reasoning that "Mr. Gache's argument that the purchase price was not adequate because the property was not cleaned up before it was sold shows no likely success on the merits."  (*Id.* at 84; *see id.* at 66, 67, 77-89.)  The Bankruptcy Court, however, stated it would not sign the order confirming the sale until the next day, so that Plaintiff could petition the District Court for a stay.  (*See id.* at 91-92.)  The Bankruptcy Court also rejected Plaintiff's argument that the Court should have investigated the auction process due to Plaintiff's suspicion of bid-rigging, stating, "There is no suggestion before this court that there was collusion between the bidders in the auction process."  (*Id.* at 78.)  On June 18, 1998, the Bankruptcy Court entered an order confirming the sale to Hill Realty.  (Gordon Decl. Ex. L.)

Following the Bankruptcy Court's approval of the sale, the Town began the cleanup process.  (SAC ¶ 62.)  On March 30, 1999, the Bankruptcy Court held a hearing at which Plaintiff sought another contempt order and damages against the Town based on his belief that the Town intentionally delayed its cleanup and failed to obey the Bankruptcy Court's May 22, 1998 contempt order.  (*Id.* ¶¶ 64-65.)  In connection with the March 30, 1999 hearing, Jonathan Kraut, the Town's attorney, affirmed that the "clean up of the Property is substantially complete," and that "the removal of all debris . . . was 99% complete," (Gordon Decl. Ex. M

¶ 64; *see* SAC ¶ 68), and Mr. Goldrich affirmed that Hill Realty had been informed that the cleanup was "largely completed," (*see* Gordon Decl. Ex. N ¶ 5; *id.* Ex. O ¶ 7; SAC ¶ 67).  At the hearing, the Bankruptcy Court denied Plaintiff's contempt motion and vacated the May 22, 1998 contempt order, because it found that the cleanup was "substantially completed," and the Town had failed to abide only by the "purely ministerial aspects of the settlement."  (Gordon Decl. Ex. P ("3/30/99 Transcript"), at 28-29, 31.)  Also at this hearing, the Bankruptcy Court observed that "[t]he record is further fraught with Mr. Gache's bold-face [*sic*] assertions that the town acted in 'bad faith,'" (*id.* at 29), and that through his contempt motion, Mr. Gache was, after exhausting all of his appeals, "trying to relitigate the sale of the property," (*id.* at 33).

On May 21, 1999, Plaintiff settled his bankruptcy case with the Trustee.  (SAC ¶ 72.) The settlement provided for the validity of all court orders and judgments, including the 1996 settlement and the 1998 sale of the property to Hill Realty.  (*Id.*)  By the end of June 1999, all of Plaintiff's creditors were paid ("some by settlements negotiated with the Trustee for a partial disallowance of their claims"); Plaintiff received the cash surplus that remained in the bankruptcy estate; and Plaintiff's bankruptcy case was closed.  (*Id.* ¶ 74.)

On April 15, 2003, Hill Realty filed a motion to reopen the bankruptcy case, alleging that the Town had not yet completed the cleanup.  (Gordon Decl. Ex. Q.)  According to affidavits submitted in conjunction with the motion to reopen, the cleanup would have been complete by November 1998, "but for unforeseen circumstances," (*id.* Ex. R ¶ 51), such as fuel seepage from underground fuel storage tanks on an adjacent parcel of land, (*id.* ¶ 52).  On August 7, 2003, the Bankruptcy Court awarded Hill Realty $971,000 in contractual damages.  (SAC ¶ 80; Gordon Decl. Ex. U.)  Plaintiff was unaware that his bankruptcy case had been reopened until a filing in this case was submitted on May 16, 2013.  (SAC ¶ 76.)

On February 9, 2006, the Town approved the sale to Winterhill Realty, for $2.4 million, of a four-acre parcel of property that had previously been transferred by the Trustee to the Town pursuant to the September 1996 settlement.  (*Id.* ¶¶ 96-98.)  Plaintiff alleges that this sale was in fact a payment by Hill Realty to the Town pursuant to a secret agreement entered into prior to the May 1998 auction, to compensate the Town for the cost of the cleanup of the landfill and as repayment of the contractual damages paid by the Town to Hill Realty in 2003.  (*See id.* ¶¶ 99, 152, 157.)  Pursuant to the secret deal, Plaintiff alleges the price at which Hill Realty purchased the Barnes Lane Lot was lower than it otherwise would have been because Hill Realty deducted the anticipated cleanup expense from the sale price.  (*Id.* ¶¶ 120-121, 136.)  Under Plaintiff's theory, Mr. Goldrich and others lied to the Bankruptcy Court when they averred that there was no deal between Hill Realty and the Town prior to the May 27, 1998 Bankruptcy Court auction.  (*Id.* ¶¶ 128-132.)  Had Mr. Goldrich not made these assertions, the Bankruptcy Court would not have approved the sale and the sale would have been postponed until after the Town completed the cleanup, which would have resulted in a higher price for the Barnes Lane Lot.  (*Id.* ¶¶ 137, 139-143, 145-146.)

Plaintiff now brings two claims, each of which relates to Defendants' purportedly fraudulent conduct during the bankruptcy proceedings.  The first cause of action is a Rule 60 motion, asserting that Defendants' conduct constituted a fraud on the Bankruptcy Court that requires this Court to vacate the Bankruptcy Court's orders approving the sale of the property and dismissing Plaintiff's contempt motion.  (*See id.* ¶¶ 173-176.)  The second claim is for common law fraud and alleges that Defendants' conduct during the bankruptcy proceedings deprived Plaintiff of receiving the fair value for the Barnes Lane Lot and contempt sanctions

against the Town.  (*See id.* ¶¶ 177-181.)  Plaintiff demands $41.2 million in compensatory and punitive damages for the second claim.  (*See id.* ¶ 181.)

Plaintiff claims that he did not bring this action until March 12, 2013 because he could not have discovered the 2006 transaction between the Town and Winterhill Realty (which was approved at a Town board meeting eight years after Plaintiff left New York), or the pre-existing collusion between the Hill Defendants and the Town, until he read an article on June 5, 2011. (*Id.* ¶¶ 92-93, 104.)  Plaintiff contends he found the article, which was posted on May 24, 2011, "during a random Internet search of his name."  (*Id.* ¶¶ 92-93.)  Plaintiff's name was mentioned in the comments section.  (*Id.*)  The article does not mention the 2006 transaction between the Town and Winterhill Realty, nor do the comments, (*see* Gordon Decl. Ex. V), but they still prompted Plaintiff to "start[] investigat[ing] circumstances surrounding the Town's actions after his settlement in 1999," (SAC ¶ 95).

All Defendants moved to dismiss the SAC, arguing that this Court lacks jurisdiction, the claims are not sufficiently pleaded under Fed. R. Civ. P. 8(c) and 9(b), and the claims are barred by *res judicata*, issue preclusion and the relevant statutes of limitations.  (*See* Hill Ds' Mem. 9-30; Town Ds' Mem. 13-25.)[5]  Plaintiff opposed Defendants' motions and cross-moved to withdraw the reference to the Bankruptcy Court.  (*See* P's Mem. 15-34.)[6]

---

[5] "Hill Ds' Mem." refers to Memorandum of Law in Support of Motion to Dismiss submitted by the Hill Defendants.  (Doc. 35.)  "Town Ds' Mem." refers to Memorandum of Law in Support of Motion to Dismiss submitted by the Town Defendants.  (Doc. 31.)

[6] "P's Mem." refers to Memorandum of Law in Support of Cross Motion and in Opposition to Motion to Dismiss. (Doc. 48.)

## II.  DISCUSSION

### A.  Legal Standard for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it 'has authority to adjudicate the cause' pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (quoting *Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007)), *rev'd en banc on other grounds*, 585 F.3d 559 (2d Cir. 2009).  "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is 'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination." *Id.* (internal quotation marks and citations omitted); *see Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 84 (2d Cir. 2014) ("The plaintiff bears the burden of establishing [] standing.").

### B.  Standing

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance.  This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, 747 F.3d 44, 48 (2d Cir. 2014) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004)).  "The 'prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" *Rajamin*, 757 F.3d at 86 (quoting *Warth v. Seldin*, 422 U.S. 490, 509 (1975)).[7]  Rather, the "'plaintiff

---

[7] Constitutional or Article III standing requires litigants to "'have suffered an injury in fact' that is 'fairly . . . trace[able] to the challenged action' and 'likely . . . [to be] redressed by a favorable decision.'" *United States v.*

generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* (quoting *Warth*, 422 U.S. at 499).  A court need not consider both constitutional standing and prudential standing if it concludes the plaintiff does not have prudential standing.  *See Hillside Metro.*, 747 F.3d at 48.

Unless property of a bankruptcy estate is administered by the bankruptcy trustee or abandoned in one of the ways outlined in 11 U.S.C. § 554, it remains property of the bankruptcy estate even after the bankruptcy case is closed.  11 U.S.C. § 554(d) ("Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."); *see Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (per curiam); *Neely v. RMS Residential Mortg. Solution, L.L.C.*, No. 12-CV-1523, 2013 WL 752636, at *5 (E.D.N.Y. Feb. 26, 2013); *Kotbi v. Hilton Worldwide, Inc.*, No. 11-CV-3550, 2012 WL 914951, at *3 (S.D.N.Y. Mar. 19, 2012); *EDP Med. Computer Sys., Inc. v. United States*, No. 03-CV-3619, 2005 WL 3117433, at *4 (E.D.N.Y. Nov. 22, 2005), *aff'd on other grounds*, 480 F.3d 621 (2d Cir. 2007); *Tilley v. Anixter Inc.*, 332 B.R. 501, 508 (D. Conn. 2005); *Rosenshein v. Kleban*, 918 F. Supp. 98, 102-03 (S.D.N.Y. 1996); *see also In re Lopez*, 283 B.R. 22, 31 (B.A.P. 9th Cir. 2002) (estate property that is not abandoned in line with § 554 "remains property of the estate forever (until administered or formally abandoned by the trustee)") (Klein, Bankr. J., concurring).[8]  Because only the bankruptcy trustee can bring a cause of action on behalf of a bankruptcy estate, *In re Arana*, 456 B.R. 161, 169 (Bankr. E.D.N.Y. 2011) (citing 11 U.S.C. §§ 323, 704), a debtor does not have standing to bring a claim that was property of the bankruptcy estate and was not

---

*Technodyne LLC*, 753 F.3d 368, 380 (2d Cir. 2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (alterations in original).

[8] Copies of all unpublished opinions cited herein will be sent to Plaintiff.

abandoned or administered by the bankruptcy trustee, *Chartschlaa*, 538 F.3d at 123; *Neely*, 2013 WL 752636, at *5; *Kotbi*, 2012 WL 914951, at *3; *EDP Med.*, 2005 WL 3117433, at *4-5; *Tilley*, 332 B.R. at 508-11; *Rosenshein*, 918 F. Supp. at 103.  This applies even if a trustee believes a claim lacks merit.  *See Chartschlaa*, 538 F.3d at 124 ("Absent an unambiguous intent to abandon estate property, the proposed abandonment is not effective.").

      1.  <u>Bankruptcy Estate Property</u>

      After an individual files for bankruptcy, "the property of the [bankruptcy] estate is distinct from the property of the debtor."  *Bell v. Bell* (*In re Bell*), 225 F.3d 203, 215 (2d Cir. 2000).  Estate property includes, with exceptions not relevant here, "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), as well as all "[p]roceeds, product, offspring, rents, or profits of or from property of the estate," *id.* § 541(a)(6), and "[a]ny interest in property that the estate acquires after the commencement of the case," *id.* § 541(a)(7).  It is "well-established that 'property' under [§ 541] includes, as here, a civil lawsuit for damages."  *EDP Med.*, 2005 WL 3117433, at *4 (citing *Seward v. Devine*, 888 F.2d 957, 963 (2d Cir. 1989)).  Property acquired after the bankruptcy case commences "will vest in the estate if it is derived from property that was part of the estate as of the commencement of the bankruptcy."  *Chartschlaa*, 538 F.3d at 122; *see Neely*, 2013 WL 752636, at *8 ("A post-petition claim belongs to the estate if it is 'sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start.'")  (quoting *Segal v. Rochelle*, 382 U.S. 375, 380 (1966)).

Plaintiff's claims – for fraud surrounding the sale of the Barnes Lane Lot and fraud during the March 30, 1999 contempt hearing – are property of his bankruptcy estate.[9]  The Barnes Lane Lot became estate property when Plaintiff filed his bankruptcy petition.  *See* 11 U.S.C. § 541(a)(1).  One of Plaintiff's claims is, in essence, that the price Hill Realty paid for the Barnes Lane Lot was reduced by collusion between Hill Realty and the Town before and during the May 27, 1998 Bankruptcy Court auction.  Because this claim derives from the process of selling the Barnes Lane Lot (which was estate property), relates to the proceeds or profits from that property, and accrued before the bankruptcy case was closed, the claim became estate property.  *See* 11 U.S.C. §§ 541(a)(6), (7); *In re Acton Foodservices Corp.*, 39 B.R. 70, 72 (Bankr. D. Mass. 1984) (fraud cause of action arising from post-petition sale of asset that belonged to estate was estate property); *see also Chartschlaa*, 538 F.3d at 123 (claims that arose from pre-filing property were property of the bankruptcy estate); *Bogdan v. JKV Real Estate Servs.* (*In re Bogdan*), 414 F.3d 507, 512 (4th Cir. 2005) ("[T]he unconditional assignments acquired by [the] trustee from the mortgage lenders after commencement of this bankruptcy case constitute property of the estate . . . ."); *O'Dowd v. Trueger* (*In re O'Dowd*), 233 F.3d 197, 204 (3d Cir. 2000) ("because the Sevack Action belonged to the estate, including the claims that could have been but were not asserted, a malpractice suit in connection with those omitted claims likewise belongs to the estate and the estate's creditors" even though malpractice claim accrued after bankruptcy filing); *cf. Spenlinhauer v. O'Donnell*, 261 F.3d 113, 118 (1st Cir. 2001) ("Since title to property of the estate no longer resides in the chapter 7 debtor, the debtor typically lacks any pecuniary interest in the chapter 7 trustee's disposition of that property."); *Carter v. Rodgers*, 220 F.3d 1249, 1253-54 (11th Cir. 2000) (action "related to" bankruptcy

---

[9] Plaintiff seems to recognize as much in framing his claims as follows:  "[H]e was defrauded by Hill and the Town so that *his estate* did not receive a fair market value from the sale and consequential damages he sought after in the motion for contempt."  (P's Mem. 2 (emphasis added).)

estate, such that debtor needed bankruptcy court's permission to bring it, although claim "arose after the date of the bankruptcy petition, [and the] suit turns solely on allegations of wrongdoing in the sale of property belonging to the bankruptcy estate").

Plaintiff's other claim is, in essence, that Mr. Goldrich and others lied at the March 30, 1999 contempt hearing when they claimed the Town had substantially completed the cleanup, in order to shield the Town from a contempt fine, which deprived Plaintiff of the contempt sanctions the Town would have otherwise paid.  Even if the Bankruptcy Court granted Plaintiff's motion, however, the sanctions – if they went to any party – would have gone to the bankruptcy estate or Hill Realty, because the only harm caused by the delayed remediation would have been to estate property (*i.e.*, the depressed price received from the Barnes Lane Lot sale due to the Town dragging its feet in the cleanup, *see* 11 U.S.C. § 541(a)(6)), or Hill Realty (which owned the Barnes Lane Lot after the auction).  Accordingly, this claim belongs to either Plaintiff's bankruptcy estate or Hill Realty, not Plaintiff.

2.  Abandonment

Because the Trustee did not administer the causes of action Plaintiff asserts here – by, *e.g.*, bringing them in the Bankruptcy Court or elsewhere – Plaintiff would only have standing to pursue the claims if the trustee abandoned them.  *See* 11 U.S.C. § 554(d).  Section 554 provides three methods by which unadministered property can be abandoned:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
> (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
> (c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

13

11 U.S.C. § 554.  Here, §§ 554(a) and (b) are inapplicable because there has been neither notice

nor a hearing regarding abandonment of these claims.  *See Ayazi v. N.Y.C. Bd. of Educ.*, No. 98-

CV-7461, 2006 WL 1995134, at *4-5 (E.D.N.Y. July 14, 2006), *rev'd on other grounds*, 315 F.

App'x 313 (2d Cir. 2009) (summary order).  Indeed, there could be no meaningful hearing unless

Plaintiff's bankruptcy estate is reopened and a new trustee assigned, because the estate's interests

– whatever they might be – would otherwise not be represented.[10]  Likewise, Plaintiff never

scheduled these claims, (*see* Gordon Decl. Ex. B), and thus § 554(c) is inapposite, *see*

*Rosenshein*, 918 F. Supp. at 102-03.

***

Accordingly, Plaintiff does not have standing, *Neely*, 2013 WL 752636, at *5; *Kotbi*,

2012 WL 914951, at *3; *EDP Med.*, 2005 WL 3117433, at *4; *Tilley*, 332 B.R. at 508, and his

claims are dismissed, *see Chartschlaa*, 538 F.3d at 124; *Tilley*, 332 B.R. at 511.[11]  Plaintiff's

motion to withdraw the reference is denied as moot.

---

[10] Plaintiff suggests a trustee would have no interest in pursuing the claim because there are no creditors.  It is not clear to the Court that all creditors were paid in full, (*see* SAC ¶ 74), but in any event, the decision whether the claims are worth pursuing is the Trustee's in the first instance.  Plaintiff has pointed to no exception in the statute, and the Court is aware of none, for the situation where there are no creditors or the debtor otherwise believes the trustee would not be interested in pursuing the matter.  Only if a trustee decides to abandon the claims would Plaintiff be free to pursue them, assuming they were otherwise viable, *see* 11 U.S.C. § 554(d), which they are not, *see infra* n.11.

[11] Even if Plaintiff had standing, his claims would be dismissed.  First, applying the appropriate standard for Fed. R. Civ. P. 12(b)(6) motions, *see Clark v. Kitt*, No. 12-CV-8061, 2014 WL 4054284, at *6 (S.D.N.Y. Aug. 15, 2014) (setting forth standard), Plaintiff's claims are implausible under either Fed. R. Civ. P. 8 or the heightened pleading requirements of Fed. R. Civ. P. 9(b).  Plaintiff claims that the Town and the Hill Defendants conspired before the Barnes Lane Lot auction to have Hill Realty deduct the Town's cleanup expense from the amount it paid for the property, and then eventually reimburse the Town for the cleanup expense.  The evidence of this fraudulent scheme (aside from Plaintiff's conjecture that there was such a scheme), is Hill Realty's 2003 motion to collect contractual damages from the Town because the Town had not fully remediated the Barnes Lane Lot and the 2006 sale of other property from the Town to Winterhill Realty for which Plaintiff alleges Winterhill Realty paid an inflated price.  Drawing all inferences in Plaintiff's favor, these two pieces of evidence do not support a plausible inference of fraud.  If indeed there was an agreement under which the Hill Defendants would underpay the bankruptcy estate for the Barnes Lane Lot and then secretly use the saved money to reimburse the Town for the cleanup, Hill Realty would not have moved for contractual damages against the Town in 2003.  That motion resulted in money going from the Town to Hill Realty, undermining the alleged plot (and, on Plaintiff's theory, requiring Hill Realty to overpay even more for the 2006 acquisition).  Especially given that Plaintiff presents no facts to support the

14

conclusory allegation that the price Winterhill Realty paid in 2006 was in fact significantly inflated, the mere existence of the transaction(s) simply cannot bear the weight Plaintiff assigns it. Indeed, even Plaintiff admits that his theory of a conspiracy pre-dating the 1998 auction and concluding with the 2006 sale, which spanned three Town administrations, is "arguably . . . not reasonable." (P's Mem. 18.) While he contends that the claims are sufficient because "they could still be . . . within the realm of possibility," (*id.*), and "imaginable," (*id.* at 19), such claims fall short of the required standard of plausibility, *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (internal quotation marks omitted). Likewise, Plaintiff's evidence sheds no light on whether any party lied during the 1999 contempt hearing about the pace of the Town's remediation. It seems rather logical that the parties believed the cleanup was substantially complete in 1999 even though the cleanup was not, in fact, substantially complete because underground oil tanks on an adjacent property contaminated the soil. Accordingly, all we are left with is Plaintiff's surmise and conjecture that there was a scheme to defraud him, and this is insufficient to plausibly state a claim for relief.

Second, the claims are barred by issue preclusion and *res judicata*. *See Katchen v. Landy*, 382 U.S. 323, 334 (1966) ("The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts."); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (federal law "determin[es] the preclusive effect of a federal judgment"). Plaintiff's claims rely on the premise that the Town and Hill Defendants conspired to have Hill Realty deduct the Town's cleanup expense from the amount it paid for the Barnes Lane Lot, and then eventually reimburse the Town for the cleanup expense. The Bankruptcy Court, however, decided that there was no such agreement. (*See* 6/17/98 Transcript 7-8; Gordon Decl. Ex. L ¶ D); *see also Johnson v. Cnty. of Nassau*, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006) (on Fed. R. Civ. P. 12(b)(6) motion, court may take judicial notice of transcripts from prior proceedings). Moreover, the lack of tampering with the auction process was necessary to the Bankruptcy Court's approval of the sale, (*see* 6/17/98 Transcript 59-78), and Plaintiff was afforded the chance to litigate this issue at several junctures of the bankruptcy case. Plaintiff's contention that he could not appeal the sale, because the Bankruptcy Court did not issue a stay before approving the sale, (*see* P's Mem. 28), is belied by the June 17, 1998 hearing transcript, which reveals that the Bankruptcy Court permitted Plaintiff to seek a stay in the District Court before the Bankruptcy Court would sign an order affirming the sale the next day, (*see* 6/17/98 Transcript 91-92). Even if Plaintiff could not have sought a stay, Plaintiff could still have challenged on appeal whether Hill Realty was a good faith purchaser. *See* 11 U.S.C. § 363(m); *Kabro Assocs. of W. Islip, LLC v. Colony Hill Assocs.* (*In re Colony Hill Assocs.*), 111 F.3d 269, 272-73 (2d Cir. 1997). Thus the claims are barred by issue preclusion. *See Rep. of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011) (issue preclusion "applies when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits") (internal quotation marks omitted). Likewise, Plaintiff could have brought (and did, in fact, bring) claims regarding fraudulent collusion between the Town and Hill Realty during the bankruptcy proceeding. Thus the claims are also barred by *res judicata*. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) ("[T]he doctrine of *res judicata*, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action.") (internal quotation marks and alterations omitted); *U.S. ex rel. Finney v. Nextwave Telecom, Inc.*, 337 B.R. 479, 489-90 (S.D.N.Y. 2006) (*res judicata* barred suit where fraud allegations could have been brought to challenge settlement approved by bankruptcy court). Plaintiff's argument that new evidence – that Hill Realty moved for contractual damages against the Town for the pace of the cleanup in 2003 and then Winterhill Realty paid the Town an allegedly inflated price for land in 2006 – prevents the operation of *res judicata* and issue preclusion fails. (*See* P's Mem. 25-30.) Because Plaintiff's claims are grounded almost entirely upon an agreement to defraud Plaintiff that was reached during the bankruptcy proceeding and the alleged fraud claims accrued when the Bankruptcy Court approved the sale of the Barnes Lane Lot and denied Plaintiff's motion for sanctions, the new evidence does not bar application of *res judicata*, *see TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 502 (2d Cir. 2014) (while "*new* conduct occurring after [settlement of first suit] that is sufficient to state one or more new causes of action" bars application of *res judicata*, "'the mere inclusion of a few [acts following such settlement cannot] resurrect a claim grounded almost entirely upon . . . events [preceding the prior litigation].'") (quoting *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 114 (2d Cir. 2000)), nor does the new evidence bar the application of issue preclusion since the new evidence does not give rise to an inference of fraud and thus does not call into question the fairness of the Bankruptcy Court's determinations, *see Pack v. Artuz*, 348 F. Supp. 2d 63, 75 (S.D.N.Y. 2004) (under New York law, new evidence is one factor in determining fairness of prior

## C. **Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

---

proceeding). *But see Runaway Dev. Grp. v. Pentagen Techs. Int'l Ltd.*, 396 F. Supp. 2d 471, 475 n.3 (S.D.N.Y. 2005) (cases applying federal law of issue preclusion seemingly do not say court should consider availability of new evidence, contrary to cases applying state law). Contrary to Plaintiff's contentions, *Shah v. N.Y. State Off. of Mental Health*, 523 F. App'x 828, 830 (2d Cir. 2013) (summary order), and the cases cited therein do not bar application of *res judicata* here because the alleged fraud occurred prior to Plaintiff's settlement with the bankruptcy trustee and the new evidence is (under Plaintiff's theory) merely additional evidence of the original fraud, not independent instances of fraud for which Plaintiff could recover, *see id.*; *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383-85 (2d Cir. 2003).

Third, the evidence discovered after the bankruptcy case closed does not support the strong inference of fraud necessary to sustain motions under Fed. R. Civ. P. 60(b)(3) or 60(d)(3). *See Space Hunters, Inc. v. United States*, 500 F. App'x 76, 78-79 (2d Cir. 2012) (summary order). Reopening the bankruptcy case to annul the 1998 Barnes Lane Lot sale to Hill Realty is, moreover, not "necessary 'to prevent a grave miscarriage of justice,'" *id.* at 78 (quoting *United States v. Beggerly*, 524 U.S. 38, 47 (1998)), because the Bankruptcy Court found Plaintiff's bankruptcy estate was paid close to Plaintiff's appraiser's estimate of the Barnes Lane Lot's value.

Finally, Plaintiff's Fed. R. Civ. P. 60 motion is time-barred because Fed. R. Civ. P. 60(b)(3) motions are subject to a one-year statute of limitations, *see* Fed. R. Civ. P. 60(c)(1); *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir. 2002), and Plaintiff's fifteen-year delay from the time he settled his bankruptcy case (or the seven-year delay from when Winterhill Realty purchased the land from the Town) takes this suit outside of the "reasonable time" period within which he had to file a Fed. R. Civ. P. 60(b)(6) motion, *see* Fed. R. Civ. P. 60(c)(1); *Shah v. N.Y. State Dep't of Civ. Serv.*, No. 94-CV-9193, 2014 WL 3583506, at *4 (S.D.N.Y. July 17, 2014). Because the Hill and Town Defendants were, effectively, Plaintiff's "opposing parties" in the bankruptcy case and motions based on an opposing party's fraud on the court are properly brought under Fed. R. Civ. P 60(b)(3), not 60(d)(3), Plaintiff "may not salvage the [untimely 60(b)(3)] claim by filing under Rule 60(d)(3) instead." *Rowe Entm't v. William Morris Agency Inc.*, No. 98-CV-8272, 2012 WL 5464611, at *2 n.4 (S.D.N.Y. Nov. 8, 2012) (citing *Anderson v. New York*, No. 07-CV-9599, 2012 WL 4513410, at *4 (S.D.N.Y. Oct. 2, 2012)).

As such, it would be pointless to stay this case so that Plaintiff could attempt to have a new trustee appointed for his bankruptcy estate (either in this Court if I withdraw the reference or in the Bankruptcy Court if I do not), so that the new trustee could either pursue or abandon these claims. *See Ayazi*, 315 F. App'x at 314-15; *EDP Med.*, 480 F.3d at 624; *Alex Charts v. Nationwide Mut. Ins. Co.*, 16 F. App'x 44, 45-46 (2d Cir. 2001) (summary order).

In this case, a pre-motion conference was held at which Plaintiff was fully informed of Defendant's arguments regarding defects in Plaintiff's Complaint. (*See* Minute Entry 5/28/2013.) Plaintiff amended his complaint in response to the arguments raised during the pre-motion conference. Plaintiff's failure to fix deficiencies in his previous pleadings, after being provided full notice of the deficiencies, is alone sufficient ground to deny leave to amend *sua sponte*. *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *see also Ruotolo*, 514 F.3d at 191 (affirming denial of leave to amend "given the previous opportunities to amend"). Further, Plaintiff has not requested leave to file a Third Amended Complaint or suggested that he is in possession of facts that would cure the deficiencies identified in this opinion. A plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint. *See TechnoMarine*, 758 F.3d at 505. Accordingly, I decline to grant Plaintiff leave to amend *sua sponte*.

### III.  <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motions to Dismiss are GRANTED and Plaintiff's Motion to Withdraw the Reference is DENIED.  The Clerk of Court is respectfully directed to close the case and terminate the pending Motions.  (Docs. 29, 32, 47.)

**SO ORDERED.**

Dated: September 22, 2014
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J

18